UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | |
|---|---|
| Case No. | CV 16-1681 DSF (AJWx) |
| Date | 03/29/17 |
| Title | Rosanna M. Perez v. VITAS Healthcare Corporation of California, et al. |

Present: The Honorable DALE S. FISCHER, United States District Judge

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING Defendants' Motion for Summary Judgment (Dkt. 23)

Defendants VITAS Healthcare Corporation of California and VITAS Healthcare Corporation (VITAS) move for summary judgment as to Plaintiff Rosanna M. Perez's complaint alleging wrongful termination and failure to accommodate under the Fair Employment and Housing Act (FEHA) and related common law claims. The motion is granted.

## I. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits

or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-24; Fed. R. Civ. P. 56(c)(1).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Id. at 250-51.  "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.  Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ."  Anderson, 477 U.S. at 252.

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d at 385.  A party seeking to admit evidence bears the burden of proof to show its admissibility.  Id.  Courts need not scour the record to determine if evidence is admissible.  Id. at 385-86.  The Court "is not required to comb the record to find some reason to deny a motion for summary judgment" either.  Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988).[1]  Specific facts are required; conclusory allegations will not suffice.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).  "[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists."  British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

## II.   UNDISPUTED FACTS

In 2013 Perez began working as a Sales Representative for VITAS's Coastal Cities Program in Torrance, California, which offers hospice care to end-of-life patients.

---

[1] Here, for example, Plaintiff submitted more than two hundred additional facts referencing an additional six hundred pages of exhibits, yet cites to only a few of these facts when making substantive arguments in the opposition brief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Undisputed Fact (UF) 1-2.[2] Perez was not meeting her sales goal, which according to Perez, was due to factors outside her control. She agreed to switch to the role of Admission Liaison where she was no longer required to meet sales goals. UF 3-6, 46-47. Perez was the only Admission Liaison in the Program with a combination of admission and community liaison responsibilities. UF 7. Her duties consisted of meeting with Spanish speaking families in the community to explain the Program's hospice services. Lopez Decl., Ex. D (Villaluz Depo. at 24:17-23), Ex. E (Ayala Depo. at 19:21-20:9).

Perez had attended doctor's appointments to monitor her thyroid since approximately 2002 or 2004. UF 8. While at VITAS, she took time off for these appointments and was never denied PTO. UF 9. On October 26, 2015, Perez was diagnosed with thyroid cancer and underwent surgery to remove her thyroid on November 19, 2015. UF 10. She had filled out a PTO form stating she needed paid time off from November 19 through November 27 for "scheduled surgery." UF 11. Raymund Villaluz, the Program's General Manager, signed off on this PTO request. UF 76. Perez was approved for FMLA leave through December 7, 2015 but wanted to return to work early and returned on December 2, 2015 feeling she could perform the essential functions of her job "100 percent." UF 12, 14.

When Perez returned to work, she also submitted a return-to-work authorization from her physician to Peggy Murray (the Program's Business Manager of Human Resources), which stated Perez had no limitations or restrictions. UF 13, 33. Perez did not ask to take any additional time off and did not tell Murray that she needed any kind of accommodation; none of her doctors told her she had any limitations. Murphy Decl., Ex. 78 (Perez Depo. at 93:15-24; 111:9-11; 112:17-24); Perez Decl., Ex. 37. However, she did tell Murray, as well as Nicole Giles (the Program's admissions manager to whom Perez reported and who reported to Villaluz regarding Perez's work) and Jennifer Ayala (an admissions coordinator) that - although the surgery removed her thyroid, the cancer had begun to metastasize and she was going to require time off for radioactive iodine

---

[2] Citations to "UF" refer to the facts asserted by a party by that referenced number, and the response by the opposing party. See Dkt. 40-1 (Def. Reply to Pl.'s Gen. Disp.). Plaintiff frequently labeled Defendants' facts as "disputed," but then cited to evidence that did not actually dispute that fact. Defendants offered a litany of objections to many of the facts offered by Plaintiff, regardless of whether the evidence actually created a triable issue of fact. Neither approach was helpful to the Court. The evidence cited here is undisputed. Unless otherwise noted, Defendants' objections had no bearing on dispositive issues. Plaintiff's objections are overruled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

treatment in the future.  Perez Decl., ¶¶ 25-27; Murphy Decl., Ex. 78 (Perez Depo. at 48:17-24; 90:20-91:2; 93:15-24; 111:9-25), Ex. 74 (Ayala Depo. at 17:24-18:22); UF 30-32, 89, 91, 95.[3]  When Perez told Murray, Giles, and Ayala this on December 2, 2015, she did not yet know when she would need time off or for how long; and did not know the date of her treatment until after her employment with VITAS ended.  UF 26, 97.[4]

During the fourth quarter of 2015, Villaluz (the Program's General Manager) and Jo Ann Mack (VITAS's Senior Vice President of Operations) discussed the Program's waning productivity and the possibility of eliminating a position to alleviate the Program's financial burden.  UF 18, 108-09.[5]  After reviewing the duties of positions in the Program, Villaluz determined Perez's position should be eliminated because (i) there was only one employee in that position, and (ii) the position's duties were redundant and covered by Admissions Nurses who also had medical training to assess and admit patients (which an Admission Liaison could not do).  UF 19.[6]  In early December 2015, Villaluz and Mack made the decision to eliminate the Admission Liaison position and lay Perez off.  UF 20.  Villaluz and Mack had no knowledge about Perez's cancer diagnosis or treatment when they made the decision to eliminate her position.  UF 21, 115-16.  No one provided Villaluz with any information about how Perez was doing after her surgery.  UF 100.  Neither Murray, Giles, nor Ayala participated in the discussions or decision to eliminate Perez's position.  UF 22.[7]  On December 8, 2015, Villaluz sent Murray an

---

[3] Perez had shared her diagnosis with Giles and Ayala prior to her surgery.  UF 51-63, 65-71, 80.  Giles never told anyone in management – including Villaluz – what Perez told her after her surgery.  UF 92, 94.  After Perez told Murray about her surgery and need for radioactive iodine treatment, she received no response from Murray.  UF 96.

[4] Perez ended up needing about a month off from the time she started the treatment before she could return to work.  Perez Decl., ¶¶ 36-37.

[5] Mack recalled talking about the Program's declining admissions with both Villaluz and Kristine Giordano (the former Senior General Manager).  UF 108.

[6] Perez attempts to dispute this fact by submitting a variety of evidence, including job postings.  This evidence does not create a triable issue of fact, as discussed in more detail below.

[7] Perez cites evidence Giles and Murray were notified about Villaluz's decision to lay Perez off before it occurred, UF 117-24, but this does not raise triable issues regarding their involvement in discussions that led to that decision or their influence on that decision.  See Giles Decl., ¶¶ 2-3; Murray Decl., ¶¶ 2-3; see also Lopez Decl., Ex. G (Murray Depo. at 59:20-60:12).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MEMORANDUM

email requesting that she start the process of "downsizing the admission side, mainly [Perez]." Ex. 47.  On December 11, 2015, Villaluz informed Perez of her position's elimination due to the Program's declining patient census.  UF 23.[8]  After Perez's layoff, the Program continued to experience low patient census and has not employed an Admission Liaison.  UF 24.[9]

III.   DISCUSSION

A. **<u>Wrongful Termination</u>**

California has adopted a three-stage burden-shifting test for discrimination claims under FEHA based on disparate treatment.[10]

> The FEHA makes it an unlawful employment practice to discriminate against any person because of a physical or mental disability.  A prima facie case for discrimination "on grounds of physical disability under the FEHA requires plaintiff to show: (1) [s]he suffers from a disability; (2) [s]he is otherwise qualified to do [her] job; and, (3) [s]he was subjected to adverse employment action because of [her] disability.  On a motion for summary judgment brought against such a cause of action the plaintiff bears the burden of establishing a prima facie case of discrimination based upon physical disability, and the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action.  Once the employer has done so the plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which

---

[8] When Villaluz mentioned Perez's impending layoff to Giles, he provided the same reason.  UF 118.

[9] The evidence supports the fact that in 2016 – after Perez's layoff – census numbers were "flat."  UF 139 (citing Murphy Decl., Ex. 77 (Mack Depo. at 70:13-19)).

[10] Perez mentions disparate impact, as well.  <u>See</u> Opp. at 17, 18.  Perez may have identified certain facially neutral practices or policies, but she provides no evidence of disproportionate effect on disabled employees.  <u>See</u> <u>Carter v. CB Richard Ellis, Inc.</u>, 122 Cal. App. 4th 1313, 1323-27 (2004) (plaintiff failed to come forward with relevant statistical evidence to make prima facie disparate impact case).  Instead, the only relevant evidence in the record undermines this theory.  <u>See</u> UF 16-17.  The Court therefore addresses only Perez's disparate treatment theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

would permit a reasonable trier of fact to conclude the employer intentionally discriminated.

Faust v. California Portland Cement Co., 150 Cal. App. 4th 864, 886 (2007) (citations omitted).

A prima facie case thus requires a causal link between the plaintiff's disability and the defendant's adverse action. A plaintiff fails to establish this causal link if the evidence does not support an inference that the individuals who made the termination decision had knowledge of the plaintiff's disability. See Trop v. Sony Pictures Entm't. Inc., 129 Cal. App. 4th 1133, 1145-46 (2005).

It is undisputed that at most three individuals were involved in the decision to lay off Perez: Villaluz, Mack, and Giordano. UF 18-20, 108.[11] VITAS presents evidence these three individuals had no knowledge of Perez's disability when they began discussing and made the decision to eliminate her position and lay her off. See UF 21 (citing uncontroverted deposition testimony and declarations).

Perez disputes this by pointing to the PTO request that Villaluz approved. See Perez Decl., Ex. 26 (PTO-Scheduled box checked and notation that it was for "Scheduled surgery"). Perez also appears to rely on a medical health questionnaire she filled out when she began her employment with VITAS. See Ex. 6 (box for "THYROID PROBLEMS" is checked "YES" when asked "Have you ever had or now have any of the following *illnesses*?") (emphasis added). Even assuming Villaluz – and the other decision makers – knew Perez took a short leave for an undisclosed surgery and identified a current or prior illness, this does not create a triable issue as to their knowledge of Perez's disability. See Avila v. Cont'l Airlines, Inc., 165 Cal. App. 4th 1237, 1249 (2008), as modified on denial of reh'g (Aug. 28, 2008).

Murray, Giles, and Ayala may have been aware of Perez's disability before she was laid off – and may have found out Perez was being laid off before Perez herself did. But Perez does not offer any evidence disputing the fact that neither Murray, Giles, nor

---

[11] The evidence Perez cites (relating to job postings) does not dispute this.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

Ayala participated in the discussions or decision to eliminate her position and did not inform the relevant decision makers about Perez's disability.  UF 21-22.[12]

Elsewhere, Perez argues that Murray, Giles, and Ayala's knowledge of her disability should be imputed to VITAS.  Opp. at 10.  But Perez cites no instance where a court found knowledge among employees *other than those involved in or capable of influencing the adverse employment decision* established the requisite causal connection.  See California Fair Employment & Hous. Comm'n v. Gemini Aluminum Corp., 122 Cal. App. 4th 1004, 1009-10, 1015 (2004) (rejecting contention that *all* decision makers must have knowledge when plaintiff's leave request to attend religious event was made to his supervisor, "the person responsible for taking the request to management and who was *also a member of the management committee which would grant or deny the request*") (emphasis added)[13]; see also Avila, 165 Cal. App. 4th at 1250-51 (citing cases where knowledge among other employees – including supervisors – did not warrant denying summary judgment where no evidence actual decision makers knew); cf. Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 73 (2000) ("In the absence of evidence that

---

[12] As discussed above, Giles's testimony that she was informed of Perez's impending lay off does not raise a reasonable inference that she participated in any discussion that led to the decision to eliminate Perez's position and lay her off.  See UF 22 (citing Murphy Decl., Ex. 73 (Giles Depo. at 65:14-16 ("The information I was provided is that she was being laid off and it was the night before the occurrence."); id. at 66:1-67:9 (Villaluz mentioned "in passing" Perez was going to be laid off due to low admissions)).  Giles's declaration – made under penalty of perjury – confirms as much.  See Giles Decl., ¶¶ 2-3 (she did not participate in discussions or decision to eliminate Perez's position).

[13] Gemini does reference a presumption under agency law, but it relies on Freeman v. Superior Court, San Diego Cty., 44 Cal. 2d 533, 537-38 (1955), which was not an employment case. Regardless, the presumption discussed in Freeman and Gemini hinges on an agent's duty to communicate knowledge to his or her principal.  Perez does not direct the Court to any evidence that Murray, Giles, or Ayala had a duty to inform Villaluz, Mack, or Giordano about Perez's disability in the context of this claim.  Compare Gemini, 122 Cal. App. 4th at 1015 (plaintiff required to request leave through his supervisor who was the one decision maker the others looked to for information).  Perez states that Giles "admitted that the company has a policy that says employees are to report to their immediate supervisor if they have any medical issues and that that information is to be shared with the immediate supervisor," see UF 220-21, but this is not supported by the cited testimony, see Murphy Decl., Ex. 73 (Giles Depo. at 45:1-19), and does not reflect any duty to report information to Villaluz.  See also id., Ex. 75 (Villaluz Depo. at 26:6-17) (no formal communication but Giles would report whether Perez was going out).

**MEMORANDUM**

the individuals who denied appellant employment were aware of his past filing of a grievance, the causal link necessary for a claim of retaliation can not be established.").

Perez also points to temporal proximity. But she relies on a case where a temporal connection existed *alongside* facts – not present here – that the plaintiff told her supervisor about her health issues and, soon after, the same supervisor demoted plaintiff and then eliminated her position. See Moore v. Regents of the Univ. of California, 248 Cal. App. 4th 216, 226-230, 237 (2016).

Even if the Court were to find Perez made a prima facie case, VITAS has provided a legitimate, nondiscriminatory reason for the adverse employment action and Perez has not provided the "specific, substantial evidence of pretext" necessary to avoid summary judgment. Horn v. Cushman & Wakefield Western, Inc., 72 Cal. App. 4th 798, 807 (1999); see also Mamou v. Trendwest Resorts, Inc., 165 Cal. App. 4th 686, 715 (2008) (central issue is whether evidence as a whole supports reasoned inference action was product of discrimination).

During the fourth quarter of 2015, Villaluz and Mack discussed the program's waning productivity and the possibility of eliminating a position to alleviate the program's financial burden. UF 18. After reviewing the various duties of the positions in the Program, Villaluz determined Perez's position should be eliminated because (i) there was only one employee in that position and (ii) the position's duties were redundant and covered by Admissions Nurses who also had the medical training to assess and admit patients, which an Admission Liaison like Perez could not do. UF 19. Villaluz informed Perez her position was being eliminated due to declining patient census. UF 23. The program continued to experience low patient census in 2016 and has not employed an Admission Liaison since Perez's layoff. UF 24.[14]

The evidence Perez submits to dispute the legitimacy of VITAS's reasons, or argue those reasons are mere pretext, falls short. See Mamou, 165 Cal. App. 4th at 715 (citing legitimate reason entitles employer to summary judgment when employee's showing is sufficient to invoke presumption but too weak to sustain reasoned inference action was product of discrimination).

---

[14] Perez disputes the contention that the program is still experiencing low patient census, but cites to evidence indicating numbers remained low at least in 2016. See Murphy Decl., Ex. 77 (Mack Depo. at 70:5-19) (recalling Torrance office did not perform well financially in 2016 and census numbers "remained flat" and "were pretty flat").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Perez cites multiple job postings, claiming these create a triable issue on whether VITAS eliminated Perez's position. Importantly, Perez does not offer evidence that the *reasons* given for purportedly eliminating Perez's position (and therefore Perez) were pretextual (e.g., there were others in this position or her duties could not be covered by nurses who could also carry out more tasks).[15]

The postings do not constitute "specific, substantial evidence of pretext." Some are irrelevant. See Exs. 60, 63-68 (different position and/or office). The postings advertising an Admission Liaison position at the Torrance office indicate that position was last approved in August 2015, approximately four months prior to the decision to eliminate Perez's position, although not officially closed until April 2016. See Perez Decl., Exs. 56, 57, 59. Villaluz explained the posting originated based on another individual being transferred out to a social worker position, and that although he spoke with someone in August or September about filling the position, no one was hired because they did not need to fill that position. See Murphy Decl., Ex. 75 (Villaluz Depo. at 88:10-95:25). Perez complains about the posting's continued existence after she was told the position was eliminated. See Perez Decl., Exs. 57, 58, 62. Villaluz stated that Murray was tasked with cleaning up postings,[16] but this was not a "major priority"; he believed the system would close out a posting after a certain period of inactivity, and assumed that if a decision was made not to fill a position that Murray would take it down (i.e., he wouldn't instruct her to do so). See Murphy Decl., Ex. 75 (Villaluz Depo. at 88:10-95:25). Both Villaluz and Murray confirmed that external postings – like the ones Perez viewed on Indeed – are handled by corporate, rather than at the Torrance office. See id.; see also id., Ex. 76 (Murray Depo. at 88:9-25; 91:2-20; 95:10-20).

---

[15] Some of the postings actually seem to support VITAS's stated reasons, showing that in 2016 the Torrance office almost exclusively sought nurses. See Exs. 61, 69. Elsewhere, Perez points to evidence VITAS "had hired some nurses to do some of [Perez's] former job responsibilities." UF 143. But she provides no explanation whether this meant an increase in total nurses or merely addressed turnover. See Murphy Decl., Ex. 74 (Ayala Depo. at 30:19-25) (indicating other employees at Torrance office were terminated or left since Perez's layoff). Even if these individuals were performing duties Perez previously performed, these positions also required skills Perez lacked. This undermines any argument of pretext where VITAS's stated reason was that they no longer needed someone to do Perez's duties exclusively. Cf. Gately v. Cloverdale Unified Sch. Dist., 156 Cal. App. 4th 487, 497 (2007); Moore, 248 Cal. App. 4th at 240.

[16] Other evidence indicates that, with this posting, that task fell upon another individual (Idalia Jones). See Perez Decl., Ex. 57.

**MEMORANDUM**

None of this evidence indicates the relevant decision makers affirmatively sought out candidates for the position they told Perez was being eliminated. At most, the evidence demonstrates VITAS did not remove postings that had been approved months prior to the decision to lay off Perez. Even assuming VITAS continued to advertise for a position it claimed it had eliminated, inferring intentional discrimination would not be rational on this basis alone – in light of the undisputed evidence that Perez's position did cease to exist after her layoff. See Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 360-61 (2000) ("pertinent statutes do not prohibit lying, they prohibit discrimination" and "an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory").

Perez again points to timing. But temporal proximity without more does not satisfy an employee's burden to raise a triable issue regarding whether the articulated reason is a pretext. See Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 353 (2008). Evidence of Perez's prior good performance is also of little probative value here – where VITAS never justified laying Perez off by pointing to inadequate performance. See id. at 353-54.

Without citing any evidence, Perez argues there is a triable issue whether her "immediate manager" informed the "general manager" of Perez's disability and "they decided to terminate Plaintiff's employment anyways." Opp. at 20. Presuming Perez is referring to Villaluz's passing comment to Giles, there is no such dispute. See supra n.12; UF 21. Perez also argues – again without citation to any of the hundreds of facts or exhibits she submitted – that pretext can be shown based on violation of a company policy. But she provides no evidence VITAS followed certain policies and procedures, only departing from them for Perez. Compare Moore, 248 Cal. App. 4th at 239-40 (person who made decision was informed by human resources she was not adhering to stated seniority policy); with, e.g., UF 220-21 (Giles unaware of unsubstantiated company policy to report medical issue to upper management). Perez's passing reference to a disparate impact theory is irrelevant and the inconsistencies Perez points to regarding whether or not Villaluz mentioned Perez by name in an email and what Murray did or did not say in the termination meeting do not create a reasonable inference that VITAS's justification was baseless and used to veil discrimination.

For these reasons, VITAS's motion as to wrongful termination under FEHA is GRANTED.

B. **Reasonable Accommodation**

Employers are required to provide reasonable accommodations for employees' disabilities. Cal. Gov't Code § 12940 (m)(1). An employee must first request an accommodation. See Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34, 54 (2006); but see Prilliman v. United Air Lines, Inc., 53 Cal. App. 4th 935, 943-44, 952-54 (1997) (rejecting employer's argument that it had no duty to investigate *other* accommodations for pilots who were grounded due to medical condition, placed on disability, and never requested other accommodations such as placement in other positions).[17] The duty to accommodate does not arise until the employer is aware of the employee's disability and physical limitations. See Avila, 165 Cal. App. 4th at 1252-53; cf. Prilliman, 53 Cal. App. 4th at 943-44 (employer was aware pilots were grounded due to medical condition).

> The interactive process of fashioning an appropriate accommodation lies primarily with the employee. An employee cannot demand clairvoyance of his employer. The employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. It is an employee's responsibility to understand his or her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee. Plaintiff therefore was obliged to tender a specific request for a necessary accommodation.

King v. United Parcel Serv., Inc., 152 Cal. App. 4th 426, 443 (2007) (citations, internal quotation marks, and alterations omitted).

Perez points to no authority that an employer is on notice of an employee's physical limitations triggering the duty to accommodate those limitations where the employee mentions only that she is "going to require time off for [] treatment" in the future without any further information regarding timing or duration. See Murphy Decl., Ex. 78 (Perez Depo. at 111:9-112:2); compare Soria v. Univision Radio Los Angeles, Inc., 5 Cal. App. 5th 570, 598-600 (2016), review denied (Mar. 1, 2017) (triable issue on

---

[17] While Perez refers to VITAS's purported failure to engage in an interactive process, see Opp. at 12 (citing Cal. Gov't Code § 12940(n)), this is a separate cause of action. Wysinger v. Auto. Club of S. California, 157 Cal. App. 4th 413, 424 (2007).

**MEMORANDUM**

whether employee requested accommodation when she informed superior she wanted to have an operation in December)18; Moore, 248 Cal. App. 4th at 228 (employee informed supervisor in December 2010 she would likely have surgery "in early 2011" and would need a few days off work, then in January 2011 informed her she had postponed surgery and would need two or three days off in April 2011). It is undisputed that when Perez returned to work and spoke with Giles, Ayala, and Murray, she did not know the timing or duration of leave she might need – and would not know this information until after her employment with VITAS ended. See UF 26. The evidence thus does not support a finding that Perez tendered a specific request for an accommodation triggering VITAS's duty when she only communicated she would need time off in the future, but never indicated when or for how long. See King, 152 Cal. App. 4th at 443-44 (granting summary judgment where employee did not make "the kind of specific request" required to trigger employer's duty where he admitted he was able to "get the job done" upon returning from leave and failed to get additional clarification from his doctor regarding limitations and communicate these limitations clearly and unambiguously to his supervisors). This is supported by Perez's own admissions. See UF 13-14 (Perez's return to work authorization stated she had no restrictions or limitations, Perez testified when she returned to work she could perform her job "100 percent," and Perez did not "request to take additional time off" or tell VITAS she needed any kind of accommodation); Prilliman, 53 Cal. App. 4th at 954 (employer has no duty to accommodate employee who denies a need for accommodation).

Even if there were triable issues about whether the duty to accommodate was triggered, summary judgment on this claim would still be appropriate. When Perez informed Giles that she may need more time off, Giles indicated that was "fine" and advised her to speak to human resources regarding FMLA should she need extended leave. Murphy Decl., Ex. 73 (Giles Depo. at 60:6-61:7); Lopez Decl., Ex. F (Giles Depo.

---

18 Soria did reject the employer's argument that the employee failed to request an accommodation because she did not state the *amount* of leave she needed. See 5 Cal. App. 5th at 599. But in Soria, the employee provided information about *when* she needed to be off work *and* the employer rejected her request because another employee would be on leave at the requested time. Id. at 580, 599-600. The burden was thus on the employer in Soria to "inquire further and determine whether leave could be scheduled at a different time." Id. at 600. Here, there is no evidence Perez provided information about when she needed time off, or that VITAS rejected her request and failed to engage in further discussions; there *is* evidence Perez did *not* request to take any additional time off or request any accommodation. See Murphy Decl., Ex. 78 (Perez Depo. at 93:15-24); Perez Decl., Ex. 37.

at 56:18-23). Perez confirmed that no one at VITAS expressed any concern when she indicated she would need to take more time off in the future. Murphy Decl., Ex. 78 (Perez Depo. at 112:3-16). And this is consistent with the evidence showing Perez had taken paid time off for doctor's appointments and her surgery and was never denied PTO. UF 9, 11. Perez thus offers no evidence that VITAS refused to provide the accommodation she claims she requested. Perez's complaints about VITAS failing to provide other accommodations – such as transferring her to a different position in another office or offering her part-time employment – make little sense given the undisputed evidence that: she returned to work after surgery with no limitations or restrictions "100 percent" able to do the job of Admission Liaison, since her layoff she considers herself able to perform the job of Admission Liaison, and no doctor told her before or after her layoff she would be unable to perform that job. See Perez Decl., Ex. 37; Murphy Decl., Ex. 78 (Perez Depo. at 93:2-24; 111:9-11; 112:17-24). Alternatively, summary judgment is appropriate because Perez cannot show any failure to provide a reasonable accommodation caused her damage. If an employee requests an accommodation, the employer may not avoid its duty by terminating that employee. See Moore, 248 Cal. App. 4th at 243-44. But here, a non-discriminatory layoff occurred prior to Perez needing any requested accommodation, so any failure to provide that accommodation did not cause her damage. See Prilliman, 53 Cal. App. 4th at 952; Opp. at 14 (cancer diagnosis and treatment constituted limitation that would have "required Plaintiff to take another [] leave 'but for' her termination").

For all these reasons, VITAS's motion as to Perez's accommodation claim is GRANTED.

## C. Wrongful Termination in Violation of Public Policy

In light of the above discussion, Perez's claim for wrongful termination in violation of public policy based on her FEHA claims also fails. See Sanders v. Arneson Products, Inc., 91 F.3d 1351, 1354 (9th Cir. 1996) (citing Jennings v. Marralle, 8 Cal. 4th 121, 135-36 (1994) (no public policy claim against employers who have not violated the law)); Estes v. Monroe, 120 Cal. App. 4th 1347, 1355 (2004); Stevenson v. Superior Court, 16 Cal. 4th 880, 904-05 (1997). The Court will not consider Perez's theory – advanced for the first time in opposition – that her termination violated the California Family Rights Act (§ 12945.2) (CFRA). Even if it did, all the purported bases for Perez's wrongful termination in violation of public policy fail. To succeed on this claim, Perez must similarly show a causal nexus, or actual knowledge that the employee engaged in protected behavior and intent to discharge based on that knowledge. See Loggins v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Kaiser Permanente Int'l, 151 Cal. App. 4th 1102, 1108 (2007) (FEHA); Nelson v. United Techs., 74 Cal. App. 4th 597, 613 (1999), as modified (Sept. 22, 1999) (CFRA).  Because it is undisputed those involved in the discussions and ultimate decision to eliminate Perez's position and lay her off did not know of her disability – and Perez provided no evidence those individuals were aware she may have needed more time off in the future – she has failed to provide sufficient evidence of a causal link.  Even if Perez established a prima facie case, she failed to produce specific or substantial evidence that VITAS's proffered legitimate, non-discriminatory reason for laying her off was pretextual.

VITAS's motion as to wrongful termination in violation of public policy is GRANTED.

### D. Good Faith and Fair Dealing

Perez's claim that VITAS breached a duty of good faith and fair dealing also fails because it is premised on her claims of wrongful termination and failure to accommodate.  See Opp. at 25.  A claim for breach of the covenant of good faith and fair dealing ensures an employee receives the benefits of the actual employment agreement made.  See Guz, 24 Cal. 4th at 349-53.  Perez argues that VITAS violated its policy manual, but cites to no specific evidence in support.  As discussed above, Perez failed to raise a triable issue regarding her termination violating any law, public policy, or company policy, and failed to raise a triable issue regarding her claim for reasonable accommodation.  For these reasons, VITAS's motion as to breach of a duty of good faith and fair dealing is GRANTED.

IT IS SO ORDERED.